# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>NORWALK COMMUNITY COLLEGE; JOHN SHIELDS, Individually and as Academic Advisor for General Studies, Norwalk Community College; ILENE BOYAR, Individually and as Test Monitor, Norwalk Community College; and ROBERT BAER, Ed.D., Individually and as Dean of Students, Norwalk Community College,<br><br>Defendants. | Civil Action No.<br>3:13 - CV - 1889 (CSH)<br><br><br><br>SEPTEMBER  28, 2015 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

Plaintiff Christopher Taylor commenced this action against Norwalk Community College ("NCC"), and individual defendants John Shields, Ilene Boyar and Robert Baer, in their individual and official capacities, as NCC employees, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1] Specifically, in addition to monetary damages, Plaintiff seeks preliminary and permanent injunctive relief and declaratory relief against Defendants with respect to their

---

[1]  According to the  Complaint, all  three  individual defendants are employed by NCC in the following capacities:  John Shields is the Academic Advisor, Ilene Boyar is the Test Monitor, and Robert Baer, Ed.D. is the Dean of Students.  Each is sued in his or her individual and official capacities. Doc. 1, ¶¶ 5-7.

1

allegedly discriminatory conduct in requiring Plaintiff, as a person with the learning disability of dyslexia, to take an academic placement test without providing "reasonable accommodations."[2] Doc. 1, ¶ 1.  According to Plaintiff, such reasonable accommodations should have included: "appropriate academic adjustments and auxiliary aids and services, by way of a medical professional to assist the [P]laintiff in the mechanics of the test taking which is conducted on a computer." *Id.*

In addition, in requiring Plaintiff to take the academic placement test without providing "a manner accessible to persons with disabilities, based on an individual assessment of [his] needs," Defendants allegedly violated the Rehabilitation Act of 1973, 29 U.S.C. § 701, "which prohibits discrimination against persons with disabilities in programs receiving [f]ederal financial assistance." *Id.*, ¶ 2.  Furthermore, "by denying [Plaintiff] reasonable accommodations that have been granted to other persons with similar disabilities," Defendants have allegedly  "deprived [Plaintiff] of his right to Equal Protection under the Fourteenth Amendment" and "thereby violated his civil rights as protected by 42 U.S.C. [§] 1983 and/or have acted in an "arbitrary and capricious" manner. *Id.*

In his Complaint, Plaintiff alleges the following facts.  In January 2012, Plaintiff enrolled as a full time student at NCC, a public community college located in Norwalk, Connecticut, which receives federal financial assistance. *Id.*, ¶¶ 3-4. In April 2012, Plaintiff was informed by NCC that he was required to meet with NCC's Academic Advisor, John Shields, to discuss his course selection for the upcoming academic year. *Id.*, ¶ 12.  At that meeting, Shields informed Plaintiff that he must undertake an academic placement test using a computer. *Id.*, ¶ 13.  Plaintiff explained to  Shields that he "suffered from a medical disability consisting of dyslexia, and that undergoing a placement

---

[2]     As to monetary damages, Plaintiff prays for $500,000 in compensatory damages, $1,000,000 in punitive damages, attorney's fees, litigation expenses, and costs. Doc. 1, at 15 (¶¶ 6-8).

test on a computer would [be] virtually impossible for [him]." *Id.*, ¶ 14.  According to Plaintiff, Shields made no response to this information about Plaintiff's disability. *Id.*, ¶ 15.  The day after the meeting, Plaintiff appeared at NCC to take the computerized test, but became "overcome with anxiety because of his disability and left the testing center." *Id.*, ¶ 16.

On the following day, Plaintiff allegedly received a phone call from Ilene Boyar, NCC's Test Monitor, and Plaintiff informed Boyar of his disability of dyslexia. *Id.*, ¶ 17.  Boyar and Plaintiff thereafter allegedly "spoke again, at which time the [P]laintiff requested permission from Defendants Boylar and NCC" to allow Plaintiff's doctor to accompany him "during his placement test to assist . . . with respect to his disability." *Id.*  "NCC and Boyar agreed with the foregoing and further instructed . . . that the doctor be registered." *Id.*, ¶ 18.

On or about April 5, 2013, Plaintiff and his doctor arrived at NCC for the placement test. *Id.*, ¶ 19.  Plaintiff alleges that, "during the placement test, defendant NCC informed [him] and his doctor that they must leave the premises." *Id.*  The next day, "defendant NCC and Boyar called the [P]laintiff" to a accuse him of "cheating and other allegations." *Id.*, ¶ 20.  Subsequently, NCC and Robert Baer, NCC's Dean of Students, commenced disciplinary proceedings against Plaintiff. *Id.*, ¶ 21.  On May 22, 2013, NCC and Baer held a "Student Conduct Hearing" which resulted in the Hearing Panel concluding that there was sufficient information to determine that Plaintiff had violated "Section 3 of the Policy on Student Conduct, Expectations for Student Conduct #2." *Id.*, ¶ 22.  That section mandates that students "[d]emonstrate academic integrity by not engaging in conduct that has the intent or effect of false representation of a student performance, including, but not limited to: a) cheating on an examination, and e) falsifying records or laboratory or other data." *Id.*  Due to this finding, NCC "imposed the sanction of [e]xpulsion" on Plaintiff.  *Id.*, ¶ 23.

Consequently, Plaintiff has brought the present action before this Court. Plaintiff's Complaint includes the following causes of action: (1) violation of Section 309 of the ADA, 42 U.S.C. § 12189, for failure to allow Plaintiff to take his NCC placement test "in a place and manner accessible to persons with [his] disability" of dyslexia, such as the opportunity to transcribe his answers in a test booklet (rather than a computer) or to use of an amanuensis;[3] Doc. 1, ¶¶ 37-41; (2) violation of the ADA, 42 U.S.C. § 12132, for "subject[ing] [Plaintiff] to discrimination in the administration of the placement examination, solely by reason of his disability," Doc. 1, ¶¶ 42-49; (3) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against Plaintiff, a qualified individual with a disability, when NCC is a recipient of federal financial assistance, Doc. 1, ¶¶ 50-54; (4) violation of the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983, by providing others who have "similar disabilities with reasonable accommodations which they denied the [P]laintiff" to take necessary tests, thereby "violat[ing] [P]laintiff's civil rights as guaranteed by 42 U.S.C. § 1983," Doc. 1, ¶ 55; and (5) treating Plaintiff in an "arbitrary and capricious" manner in "refus[ing] to provide . . . reasonable accommodations to the [P]laintiff while granting them to other person[s] who are similarly situated, and subjecting the [P]laintiff to the disciplinary hearing and expulsion," Doc. 1, ¶ 56.

In his Prayer for Relief, Plaintiff seeks "preliminary and permanent injunctive relief requiring [D]efendants [to] grant him reasonable accommodations in [any] future placement examinations or [other] examinations;" "prohibiting present and future acts of discrimination against persons with

---

[3]     An amanuensis is "one employed to write from dictation or to copy manuscript." *See* http://www.merriam-webster.com/dictionary/amanuensis. Plaintiff wishes to dictate his answers to the NCC placement test to an amanuensis, who would then "record the answers on the computer." Doc. 1, ¶ 38.

disabilities in violation of the provisions of the ADA, and requiring the [D]efendants to adopt a policy of providing reasonable accommodations to individuals with disabilities."   Doc. 1,  at 15, ¶¶ 1-2.   Plaintiff also requests, *inter alia*, "[p]ermanent and injunctive relief mandating the [D]efendants to vacate . . . the findings and ruling of [his] expulsion . . . from NCC," $500,000 in compensatory damages, $1 million in punitive damages, and attorney's fees, "including litigation expenses and costs." *Id.*, ¶¶ 5-8.  In sum, Plaintiff seeks both injunctive relief and monetary damages with respect to all Defendants.[4]

## II.  **PENDING MOTION**

Pending before the Court is a "Motion to Dismiss" the complaint [Doc. 7] by NCC and the three individual defendants (herein collectively "Defendants') pursuant to Rules 12(b)(1), (b)(2), (b)(5),  and (b)(6), Fed. R. Civ. P.[5]  In particular, Defendants move to dismiss on the following five grounds, as listed in the order argued by Defendants:

---

[4]  Plaintiff also requests declaratory relief from the Court.  Doc. 1, at 15,  ¶¶ 3-4.  In particular, he asks the Court to declare that: "failure to make individualized assessments of the accommodation needs of persons with disabilities is a violation of the ADA and is arbitrary and capricious;" and, under those circumstances, "subjecting those individuals [with disabilities] to disciplinary action, is [also] a violation of the ADA and is arbitrary and capricious" in itself. *Id.*

[5]  The  Court  notes, as Plaintiff observes, that "Defendants do not identify which of their arguments, if any, relate to the lack of subject matter jurisdiction" under Rule 12(b)(1). Doc. 13, at 5.  On the face of the Complaint, there is "federal question" subject matter jurisdiction in that there are multiple claims arising under federal law.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  However, to the extent that the Eleventh Amendment forecloses a particular action against NCC or its officials, the Court may be said to "lack subject matter jurisdiction" over those claims. In addition, as set forth *infra,* the allegations regarding any such claims fail to state plausible claims, Fed. R. Civ. P. 12(b)(6).

(1)     Plaintiff's first count for alleged violation of the ADA,  42 U.S.C. § 12189, fails to state a claim because the Defendants "are not private persons or entities within the meaning of the statute, which appears in Title III of the [ADA]," Doc. 7, ¶ 1.

(2)     Plaintiff's first three counts (violation of the ADA, 42 U.S.C. §§ 12189, §12132,  and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794) fail to state claims "to the extent [that] they purport to assert claims against the individual defendants in their individual capacities because as individuals, these defendants are not 'persons' or program providers within the meaning of Titles II [and] III of the ADA, or § 504," *id.*, ¶ 2.

(3)     Plaintiff's fourth count, an action under 42 U.S.C. § 1983 (based on alleged equal protection violation) fails to state a viable claim –

    (a)     "to the extent it seeks to assert such claims against NCC and the individual defendants in their official capacities," because "the Eleventh Amendment to the U.S. Constitution bars claims for both monetary and injunctive relief against such state defendants," *id.*, ¶ 3;

    (b)     the "state defendants are not 'persons' within the meaning of § 1983," *id.*;

    (c)     to the extent such claims against the Defendants "seek monetary damages[,] they are barred by state sovereign

immunity,"[6] *id.*; and

    (d)    the claim "fails to allege a violation of equal protection by selective treatment," *id.*.

(4)    Plaintiff's fifth count for "arbitrary and capricious" treatment, if it is actually "a recognized cause of action under Connecticut law," is "barred by the Eleventh Amendment to the U.S. Constitution, state sovereign immunity," *id.*, ¶ 4.[7]

(5)    "[A]ll of Plaintiff's claims . . . must be dismissed for insufficient service of process" pursuant to Rules 12(b)(2) and 12(b)(5)," *id.*, at 2.

The Court will examine each of Defendants' arguments for dismissal herein.

## III. DISCUSSION

### A. Lack of Personal Jurisdiction

In considering Defendants' motion to dismiss, the Court will first address Defendants' jurisdictional challenge, which asserts that because Plaintiff failed to effect proper service upon Defendants, the Court lacks personal jurisdiction over them. Defendants argue broadly that "[t]he Court lacks personal jurisdiction over all defendants, in all capacities, due to insufficient service of process." Doc. 8, at 8.

In particular, Defendants state that NCC, as a state agency, and the individual defendants,

---

[6] Black's Law Dictionary (9th ed. 2009) defines such "sovereign immunity" as "[a] state's immunity from being sued in federal court by the state's own citizens."

[7] Defendants further argue that even if Count Five stated a viable claim, this Court "ought to decline to exercise pendent jurisdiction over the claim." Doc. 7, ¶ 4.

three state officials or employees, have not been properly served pursuant to Fed. R. Civ. P. 4(j)(2). *Id*.   Furthermore, Defendants assert that NCC's "officials or employees have not been properly served in their individual capacities per Fed. R. Civ. Proc. [sic] 4(e)." *Id*.

Plaintiff's response to this jurisdictional challenge is simply that Defendants have "offer[ed] absolutely no explanation why the service of process is inadequate." Doc. 13, at 12.  Although conceding that he bears the burden of showing that the Court has jurisdiction over the Defendants, *id.*, Plaintiff asserts that he "may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* (citations omitted).  He further contends that it is impossible for him to refute Defendants' jurisdictional argument that they were not properly served because Defendants have presented no fact "as to why the service of process was insufficient." *Id*.

Defendants counter Plaintiff's objection by pointing out that they have provided the basis for their jurisdictional challenge: the fact that Plaintiff has not complied with Rules 4(j)(2) and 4(e), Fed. R. Civ. P. Doc. 14, at 5.  Moreover, Plaintiff bears the burden of demonstrating that there has been sufficient service of process, and here "no return of service has even been filed." *Id*.  Therefore, Defendants contend, "the motion to dismiss should be granted on these grounds." *Id.* (citing *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) ("Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists.") (citation omitted)), *cert. denied*, 548 U.S. 904 (2006).

### 1.   Rule 12(b)(2) - Insufficient Service of Process - Standard of Law

In the absence of proper service, a district court lacks personal jurisdiction over those defendants not properly served. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50,

59 (2d Cir. 2012).  In addition, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.*  "The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)," which  provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* at 59-60 (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir.2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.")). In addition to the Federal Rules, the Court must look to Connecticut law in determining whether personal jurisdiction may be exercised with respect to the Defendants.

In general, pursuant to Rule 4(c), Fed. R. Civ. P., to effect proper service, "[a] summons must be served with a copy of the complaint" and "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)," *i.e.*, "within 120 days after the complaint is filed."  Moreover, under Rule 4(e), Fed. R. Civ. P., the means of serving an individual from whom a waiver of service has not been obtained  include  "delivering a copy of the summons and of the complaint to the individual personally;" " leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."[8]  Fed. R. Civ. P. 4(e) (2)(A)-(C).

In addition, as to a state agency, such as a public community college like NCC, Rule 4(j),

---

[8]   Under Connecticut law, with respect to individual defendants in their individual capacities, the applicable state statute for service is Conn. Gen. Stat. § 52-57(a).  The statute directs service upon individuals by  "leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."

Fed. R. Civ. P.,  dictates that, absent a waiver of service, that agency may be served by "delivering a copy of the summons and of the complaint to its chief executive officer;" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R.  Civ. P. 4(j)(2)(A)-(B).  With respect to the latter form of service, the applicable state law, Conn. Gen. Stat. § 52-64, sets forth the proper manner of service against the state and its employees in their official capacity.  That statute provides, in relevant part:

> (a)  Service of civil process in any civil  action or proceeding maintainable against . . . the state or against any institution . . . thereof, or against any officer, servant, agent or employee of the state or of any such institution . . . may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford.

"Under Rule 12(b)(5), [Fed. R. Civ. P.,] a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United  States*, 492 F.Supp.2d 60, 74 (D.Conn. 2007).  "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Id*. (citing *Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 110 (D.Conn.1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Rzayeva*, 492 F.Supp.2d at 74 (citing *Cole*, 70 F.Supp.2d at 110).

The Second Circuit has "long made clear that '[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" so that the court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

10

motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)).  Moreover, the showing that the plaintiff must make to defeat a defendant's claim regarding lack of personal jurisdiction "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec.*, 722 F.3d at 84 (citation omitted).  Prior to discovery, as in the case at bar, the plaintiff may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. *Id.*[9]  Under those circumstances, the court "construe[s] the pleadings and affidavits in the light most favorable to plaintiff[ ] , resolving all doubts in [his or her]  favor." *Id.* at 86 (citing *S. New Eng. Tel. Co. v. Global NAPs Inc*., 624 F.3d 123, 138 (2d Cir.2010)).[10]

### 2.    Proof of Proper Service

In the case at bar, no proof of service has been presented to the Court.  One entry on the case docket simply states  that an "Electronic Summons [was] Issued" by the Clerk as to the defendants Robert Baer, Ilene Boyar, Norwalk Community College, [and] John Shields" on December 26, 2013.  Doc. 5.  However, there is no indication that the summons and complaint were actually served.  There is no return or "Proof of Service" filed on the docket in accordance with Rule 4(l), Fed. R. Civ. P.  Under Rule 4(l)(1), an "Affidavit [is] Required" for proof of service.  That Rule dictates that

---

[9]   *See also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) ("Our cases show that '[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, *see* Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction,' *i.e.*, by making a 'prima facie showing' of jurisdiction.") (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

[10]   Post discovery,  the  plaintiff  must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Dorchester Fin. Sec.*, 722 F.3d at 84.  In other words, "[a]t that point, the *prima facie* showing must be factually supported." *Id.* at 84-85.

"[u]nless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l)(1). Specifically, "[e]xcept for service by a United States marshal or deputy marshal, proof must be by the server's affidavit." *Id.* Nonetheless, "[f]ailure to prove service does not affect the validity of service" and "[t]he court may permit proof of service to be amended."

With regard to the Local Rules of this Court, "[a]ll civil process, including writs of summons, shall be prepared by the party who seeks such process, and, on the application of a party to the Clerk, shall issue out of the Court under its seal." D. Conn. L. Civ. R. 4(a). "Proof of Service" in this District "may be made by written acknowledgment of service by the party served, by a certificate of counsel for the party filing the pleading or papers, . . . or by affidavit of the person making the service." *Id.* 4(c).

To sustain his burden regarding Defendants' challenge to personal jurisdiction, Plaintiff provides no details regarding when, how, and/or by whom service was made. He simply alleges that "[i]t is impossible for [him] to refute Defendants' argument that they were not properly served because no fact[s] are alleged as to why the service of process was insufficient." Doc. 13, at 13. Plaintiff expects the Court to accept that service was made and was sufficient without offering any supporting facts or details. Plaintiff suggests that his conclusory allegations in this regard should suffice because Defendants were similarly vague in their allegations of inadequacy. In other words, two failures in factual description and detail should somehow negate each other, essentially nullifying Defendants' jurisdictional attack. Such logic fails. *See, e.g.*, *Peia v. U.S. Bankr. Courts*, No. CIV. 3:00-CV-2310 (PCD), 2001 WL 789201, at *3 (D.Conn. May 22, 2001) ("this court rejects a plaintiff's mere subjective belief as to sufficient service"). It remains Plaintiff's burden to come forward with proof that he has effected proper service on Defendants once the challenge to

12

personal jurisdiction arises.

Granted, Defendants have not presented their version of the facts regarding service of the summons and complaint.  They have simply stated that service was not made in compliance with Federal Rules  4(j)(2) & 4(e) of Civil Procedure.  Furthermore, persuasive case law of this District and other jurisdictions suggests that a defendant indeed "bears the burden of proof when challenging sufficiency of service of process."  *See  Peia*, 2001 WL 789201, at *3 (citing *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir.1986)).   In other words, "[o]bjections to the service of process 'must be specific and point out in what manner the plaintiff has failed to satisfy the service provision utilized.'" *Peia*, 2001 WL 789201, at *1 (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1400 (7th Cir.1993)); *see also  Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 810 (8th Cir.1986) (same).  Defendants have failed to present the specific details of their jurisdictional challenge.

As a result, Plaintiff argues that service must be deemed adequate because he has not been informed as to why or how it was not.  As set forth *supra*, he presents no facts regarding service for the Court's consideration. No waiver of service of process appears in the record. No returned and executed summons appears on the case docket.

In these murky circumstances, I find that Defendants have failed to specify why service was not properly made in this action and Plaintiff has failed to establish that proper service was in fact made.  Exercising discretion to make an accurate determination regarding personal jurisdiction, the Court will grant Plaintiff a brief interval to make a supplemental submission, describing the manner and time in which service of process was made upon the Defendants.   During the allotted time, Plaintiff must also correct his omission in failing to file a return or proof of service in compliance

with both the Federal and Local Rules of Civil Procedure.

If so advised, Defendants may, within 7 days after Plaintiff's submission, respond thereto, explaining to the Court why Plaintiff's service upon them was inadequate. If Defendants fail to respond, the Court will regard their argument regarding insufficient service abandoned and may deny the motion to dismiss on that issue.

The Court thus withholds its final ruling on the issue of personal jurisdiction until the Court receives and reviews the parties' supplemental submissions.[11] If the facts reveal that proper service was not made, the Court will have the option of either: (1) ordering that service be properly made, thereby curing the defect, within a specified period; or (2) dismissing the case in its entirety without prejudice. *See* Fed. R. Civ. P. 4(m) (court must dismiss without prejudice or order service after 120 days); *Yalincak v. Sherman*, No. 3:07CV170 (AHN), 2007 WL 3046262, at *1 (D.Conn. Oct. 17, 2007) ("Although Rule 4(m)'s 120–day time period for effecting service has expired, the rule allows the court to extend the time for service where there is good cause.").

Within the Second Circuit, pursuant to Rule 4(m), Fed. R. Civ. P., the district court must, upon a showing of "good cause," grant an extension of time for proper service to be made; and may exercise its discretion to grant such an extension "even in the absence of good cause." *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir.2007), *cert. denied*, 552 U.S. 1243 (2008).

As Judge Hall of this District noted in *Camblard v. Connecticut Department of Children and Families*, No. 3:09–cv–985 (JCH), 2010 WL 2977531, at * 1 (D.Conn. July 21, 2010):

Federal Rule of Civil Procedure 4(m) governs both (1) the dismissal of actions for

---

[11] Of course, if after evaluating Defendants' other grounds for dismissal of this action, the Court determines that there are no facially plausible claims under the *Iqbal* standard, the action will be dismissed at the end of this ruling.

14

untimely service of process and (2) extensions of time in which service may be effected. If the plaintiff shows "good cause for the failure" to serve, the district court "shall" grant an "appropriate" extension of time in which to serve. Fed. R. Civ. P. 4(m). In addition, district courts have discretion to permit an extension of time for service without good cause shown.

2010 WL 2977531, at * 1 (citations omitted); *see also John v. City of Bridgeport,* __F.R.D. __, 2015 WL 4392979, at *2 (D.Conn. July 15, 2015) (" If a plaintiff who has failed to effect service cannot demonstrate good cause, the court may dismiss the action without prejudice. Fed.R.Civ.P. 4(m). But it is not obliged to do so. The court may instead extend the time for service.") (citing *Zapata*, 502 F.3d at 193); *Craig v. Univ. of Conn. Health Ctr.*, No. 3:13–cv–00281 (WWE), 2014 WL 4364530, at *2 (D.Conn. Sept. 3, 2014) ("In accordance with Federal Rule of Civil Procedure 4(m), the district court is required to extend time for service of process where a plaintiff shows good cause, and the district court has discretion to grant extensions in the absence of good cause.") (citing *Zapata,* 502 F.3d at 196).

Furthermore, under Rule 4(m), Fed. R. Civ. P., the Plaintiff "bears the burden of proof in showing that it had good cause in not timely serving the defendant." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000). In these circumstances, "[g]ood cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay."[12] *Id.* (citation omitted). Thus, an extension of time may be appropriate when, despite a technical defect in service, the defendant has received actual notice of the action, minimizing prejudice to the defendant, and plaintiff faces dismissal, severe prejudice, due to a statute of limitations issue. *See Jackson v. Connecticut*, 244 F.R.D. 144, 146-47 (D.Conn.

---

[12] In the case at bar, the Defendants are aware of this action, regardless of whether service was proper. Such knowledge decreases the likelihood of prejudice in the event the Court considers granting an extension of time to Plaintiff to effect service.

2007).

At this juncture, holding in reserve its decision on service of process, the Court turns to the additional arguments presented for dismissal. The Court notes that in the event service was proper or may be cured with an extension of time, any cause of action which fails to state a viable claim must be stricken from the complaint. Also, if a "part of plaintiff's complaint will survive on the merits, efficiency [may] dictate[] that plaintiff not be forced to re-file the action." *Craig*, 2014 WL 4364530, at * 1. With such notions in mind, the Court rules on Defendants' remaining arguments for dismissal.

**B.**   **Failure to State A Claim**

**1.**   **Rule 12(b)(6) - Failure to State a Claim - Standard of Law**

The Supreme Court has laid down in two cases guidelines to determine whether the factual allegations of a complaint are sufficient in content and form to survive a motion to dismiss. Those cases are *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles," *id*. at 678.

First, although a complaint need not include detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

16

of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[13] *Id.* at 679.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This "facial plausibility" prong requires the plaintiff to plead facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Importantly, the complaint must demonstrate "more that a sheer possibility that a defendant has acted unlawfully."[14] *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to

---

[13]    Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard set forth in Rule 8 "does not require 'detailed factual allegations,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) – marking "a notable and generous departure from the hyper-technical code-pleading regime of a prior era" – Rule 8 simply "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *id.* at 678-79.

[14]    "Factual allegations that are 'merely consistent with' unlawful conduct do not create a reasonable inference of liability." *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal,* 556 U.S. at 678).

draw on its judicial experience and common sense."[15]  *Id.*

This summary of the *Twombly/Iqbal* pleading standards is adopted from the Second Circuit's opinion in *Pension Benefit Guaranty Corp. ex rel. Saint Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 717-718 (2d Cir. 2013).   The Second Circuit continues to adhere to the seminal "plausibility" standard set forth in *Iqbal*.  *See, e.g., Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,* 783 F.3d 395, 401 (2d Cir. 2015); *Brown v. Daikin America, Inc.,* 756 F.3d 219, 225 (2d Cir. 2014).

## 2.    Count One - Title III of ADA, 42 U.S.C. § 12189

In Count One, Plaintiff asserts that Defendants violated 42 U.S.C. § 12189, which appears in Title III of  the ADA.  That section  provides that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." As its captions indicates, Title III prevents discrimination in "Public Accommodations and Services Operated by Private Entities."   It is not applicable to *public* entities, which include any entity which is an "instrumentality of a State," 42 U.S.C. §§ 12131(1)(B),

---

[15]    In  considering  a Rule 12(b)(6) motion, the court's duty is  "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted)).  Put simply, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[]."   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In fact, it may even "appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Id.  Accord Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.  2013).

12181(6).[16]

In the case at bar, NCC, a state-run community college, is a *public* entity – *i.e.*, not a private entity for purposes of Title III.  Accordingly, this count must be dismissed as to NCC.[17]  *See, e.g., Morales v. New York*, 22 F.Supp.3d 256, 266-67 (S.D.N.Y. 2014) ("A claim under Title III of the Americans with Disabilities Act can only be asserted against a *private   entity* engaged in the provision of public accommodations, such as an inn, hotel or private school. Title III is not applicable to public entities.") (emphasis added) (citations omitted);  *Goonewardena v. New York*, 475 F.Supp.2d 310, 321 (S.D.N.Y. 2007) (senior college within City University of New York (CUNY) system was an "arm[] of the state" and thus a public entity, and, as such, was exempt from ADA section governing public accommodations by private entities, 42 U.S.C.A. § 12182).  *See also DeBord v. Bd. of Educ. of the Ferguson–Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir.1997) (dismissing Americans with Disabilities Act Title III claim asserted against public  entity, declaring

---

[16]   The regulations implementing Title III provide that discrimination is prohibited by any "private entity who owns, leases (or leases to), or operates a place of public accommodation," 28 C.F.R. § 36.201(a).  Moreover, a "private entity" is defined as "a person or entity other than a public entity." 28 C.F.R. § 36.104.  *See also* 28 C.F.R. § 36.309 (a), (b) ("[a]ny private entity offering an examination . . . must assure . . . ").

[17]   Defendants recognize that "another federal district court in *D'Amico v. New York State Board of Law Examiners*, 813 F.Supp. 217, 221 (W.D.N.Y. 1993), held 42 U.S.C. § 12111 applies to governments and governmental agencies." Doc. 8, at 3.  They respectfully submit, however, "that that court wrongly decided the issue, given that the court reached this conclusion by relying on 42 U.S.C. § 12111(7)'s definition of 'person,' which 'is defined as having the same meaning given the term in § 701 of the Civil Rights Act of 1964,' which includes governments and governmental agencies." *Id.*   (citing *D'Amico*, 813 F.Supp. at 221).  As Defendants assert, the first line of 42 U.S.C. § 12111 specifies that the definitions are those "[a]s used in this subchapter …., " which is subchapter I of the ADA covering  "employment." The ADA provision on which Plaintiff bases his first count, 42 U.S.C. § 12189, is in subchapter III, which applies to "private" entities.  Both the title of that subchapter and the regulations thereunder, including 28 C.F.R. § 36.309(a) and (b), refer to "private entit[ies]," establishing that 42 U.S.C. § 12189 is inapplicable to the Defendants in the case at bar.

that "[e]ntities subject to Title III include private schools, but not public ones"), *cert. denied*, 523

U.S. 1073, 118 (1998); *Pombrio v. Villaraigosa*, No. CV 10-5604-GHK (MAN),  2010 WL

4181340, at * 3 (C.D.Cal. Oct. 15, 2010.) ("The City and County are local governmental entities and,

thus, are 'public entities' under the ADA. 42 U.S.C. § 12131(1). ADA Title III expressly does not

apply to public entities, including local governments.") (citations and internal quotations omitted).

In addition, the individual defendants, Shields, Boyar, and Baer, are state officials and thus

improper defendants under Title III of the ADA.  In their *official* capacities, these defendants do

not operate, own or lease a private facility offering  public accommodation.  *See, e.g.,*

*Goonewardena*, 475 F.Supp.2d at 321-22 ("the individual defendants, . . . are improper defendants

[under Title III of the ADA] as in their official capacities they do not operate, own or lease a private

entity which offers public accommodation").

Furthermore, as to the allegations that individual defendants Shields, Boyar, and Baer acted

in their *personal* capacities, there is no indication that these defendants personally operated any

private facility offering public accommodations.  With respect to Title III, that statute "governs

public accommodations by private entities" and, under such circumstances, "[s]uits against

individuals in their personal capacities are not permitted under the ADA." *Goonewardena*, 475

F.Supp. 2d at 321 (citing *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107

(2d Cir. 2001)); *Kahn v. N.Y.U. Medical Center,* No, 06 -CIV-13455 LAP, 2007 WL 2000072, at

* 4 (S.D.N.Y. July 10, 2007)  (with respect to Title III claim, "courts in this District have held that

"individual[s] may not be held liable under the A.D.A  . . . in either their individual or official

capacities") (collecting cases), *aff'd*, 328 F. App'x 758 (2d Cir. 2009); *Coddington v. Adelphi Univ.*,

45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (in context of Title III action, "the court holds that the

Individual Defendants may not be held personally liable under either the ADA or the Rehabilitation Act.").[18]

In sum, all of Plaintiff's claims in Count One, arising under Title III of the ADA, must be dismissed.

**3.** **Counts Two and Three – Violations of Title II of the ADA, 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as to the Individual Defendants in their Individual Capacities**

In their motion to dismiss, Defendants argue that all of Plaintiff's first three counts (violation of the ADA, 42 U.S.C. §§ 12189 & §12132, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794) fail to state claims "to the extent [that] they purport to assert claims against the individual defendants in their individual capacities because as individuals, these defendants are not 'persons' or program providers within the meaning of Titles II [and] III of the ADA, or § 504." Doc. 7, ¶ 2.

Defendants are correct in their assertion with respect to the individual defendants in their

---

[18]    *See also Farina v. Branford Bd. of Educ.*, No. CIV. A. 3:09-CV-49 (JCH), 2010 WL 670163, at *1 (D. Conn. Feb. 19, 2010) ("the ADA and ADEA, like Title VII, do not provide for actions against individual supervisors") (citing *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009)); *Smith v. Barry*, No. 12-CV- 2063 (JS) (AKT), 2012 WL 3308397, at *3 (E.D.N.Y. Aug. 10, 2012) ("Plaintiff cannot assert a plausible ADA claim against these individuals [employees of state agency] in their personal capacities because the ADA does not provide for actions against individuals, even if they are acting in a supervisory capacity.") (citing *Darcy*, 356 F. App'x at 434); *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 449-50 (E.D.N.Y. 2002) (holding supervisor of state agency "may not be held personally liable for the alleged violations under the ADA" because "[i]ndividual defendants may not be held personally liable for alleged violations of the ADA") (collecting cases).

  *Accord, e.g., Emerson v. Thiel Coll.*, 296 F.3d 184, 189 n.3 (3d Cir. 2002) ("We do not believe . . . that Congress intended to impose personal liability upon each person involved in [plaintiff's] education. Rather, . . . the institution has the power to make accommodations and thus is the proper defendant" [provided it is a private entity falling under the statute]); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) ("the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations").

individual or personal capacities. The Court has addressed the Title III claims, *supra*.[19] Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Second Circuit has held that to the extent that a plaintiff "is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (citing *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (with respect to Title II, "the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations"), *cert. denied*, 531 U.S. 1190 (2001); *Alsbrook v. Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (*en banc*) ("Title II provides disabled individuals redress for discrimination by a 'public entity'" and "[t]hat term, as it is defined within the statute, does not include individuals") (citing 42 U.S.C. §§ 12132, 12131(1), respectively); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F.Supp.2d 543, 557 (D.N.J.2000) (same as to Title II and § 504) (collecting cases); and *Montez v. Romer*, 32 F.Supp.2d 1235, 1240-41 (D.Colo.1999) (same as to Title II and § 504)). *See also Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) ("This result comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively. ") (collecting cases).

The Court further notes that § 504 of the Rehabilitation Act, by its terms, does not apply to

---

[19] The Court has already determined that individual defendants who are state officials and employees are not proper defendants under Title III of the ADA, 42 U.S.C.A. § 12182, *et seq. See* Part III.B.2., *supra* (dismissing count one).

the individual defendants in their individual capacities. Section 504 provides in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance* . . . .

29 U.S.C. § 794(a) (emphasis added).  "Program or activity" is defined in part as all of the operations of a college or university.  *Id.* § 794(b)(2)(A).  By its terms, Section 504 applies to federal financial assistance recipients. *See United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 605-06 (1986) (explaining that "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds"). In the case at bar, NCC is the recipient of federal financial assistance, but the individual defendants receive no federal aid. Thus, Plaintiff  does not state a proper claim against the individual defendants in their personal capacities under § 504 of the Rehabilitation Act. *See  Garcia*, 280 F.3d at 107.

Plaintiff's second and third counts against the individual defendants, Shields, Boyar, and Baer, in their personal or individual capacities will be dismissed.  These claims are foreclosed by the binding precedent of the Second Circuit in *Garcia*,  213 F.3d at 346, and its analysis of the terms of the relevant statutory provisions.

As Defendants have asserted no basis upon which to dismiss Plaintiff's Title II claims against the individuals in their *official* capacities, those claims remain pending. Similarly, Plaintiff's Rehabilitation Act claims against the individual defendants in their official capacities have not been challenged by Defendants and may  proceed.[20]

---

[20]    The  Court  notes  that  the  Second  Circuit  has  indicated  that  "[n]either § 504 [of the Rehabilitation Act] nor Title II displays any intent by Congress to bar a suit against state officials

4.      **Count Four - Section 1983 Claim Arising from Violation of Equal Protection**

In the fourth count, Plaintiff alleges that the Defendants have violated his civil rights guaranteed by 42 U.S.C. § 1983 by violating the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend XIV.  Doc. 1, ¶ 55.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Supreme Court has clarified that "[t]his language expressly encompasses only suits

---

in their *official* capacities for injunctive relief." *Henrietta v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003) (emphasis added). Thus, "there is no basis for holding that the ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity." *Id.  See also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) ("Title II and Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established by *Ex parte Young*, proceed against individual officers in their official capacity") (citation omitted).  It thus follows that there is precedent in this District allowing both § 504 and Title II claims to proceed against individual defendants in their *official* capacities. *See, e.g., Dunion v. Thomas*, 457 F.Supp.2d 119, 123 (D.Conn. 2006) (denying summary judgment to individual defendants in official capacities where "[g]enuine issues of material fact exist with respect to the . . . claims for injunctive relief . . . as to whether the defendants' asserted failure to provide any vocational rehabilitation services to [plaintiff] was because of her disability"); *see also Credle-Brown v. Connecticut*, 502 F.Supp. 2d 292, 301 (D.Conn. 2007) (denying dismissal of Title II claim against individual defendants "in their official capacities for monetary damages and prospective relief under Title II").  However, the Court need not reach the issue of whether Plaintiff's Title II and § 504 official capacity claims state a claim where that issue has not been presented.

brought against a State by citizens of another State, but this Court long ago held that the Amendment

bars suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265,

276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "The Eleventh Amendment thus 'affirm[s]

that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art.

III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447–48 (2d Cir.1999)

(citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

　　　In sum, sovereign immunity arising under the Eleventh Amendment prohibits suits against

the State, including a state agency in federal court. *Pennhurst*, 465 U.S. at 98; *see also Severino v.

Negron*, 996 F.2d 1439, 1441 (2d Cir.1993). Thus, "in the absence of consent a suit in which the

State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment." *Papasan,* 478 U.S. at 276 (citing *Pennhurst*, 465 U.S. at 100).[21] "This bar exists

whether the relief sought is legal or equitable." *Id.* (citations omitted).[22]

　　　To the extent that a state official is sued for damages in his official capacity, "such a suit is

deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment

immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F.Supp. 525,

---

[21]　*See also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (pursuant to Eleventh Amendment an unconsenting state and its state officials sued in their official capacity are immune from suits for damages brought in federal courts); *Florida Dep't Of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149-50 (1981) (absent consent, a suit in which the State or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment).

[22]　A state may waive its Eleventh Amendment immunity provided that the waiver is unequivocally expressed. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment, by utilizing its "power to enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (internal quotation marks omitted). However, as set forth *infra*, § 1983 does not override Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

539 (N.D.N.Y. 1995) (citing, *inter alia*, *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1994), *cert. denied*, 510 U.S. 107 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) (holding that "[a] claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer").

In *Ex Parte Young*, 209 U.S. 123 (1908), however, the Supreme Court articulated that a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir.2007) (citations and internal quotation marks omitted). "Such claims . . . cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities." *Ghent v. Moore*, 519 F.Supp.2d 328, 334 (W.D.N.Y.2007) (citing, *inter alia*, *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir.1991)).

### a.    Eleventh Amendment and Section 1983

#### 1.    State and State Agencies

The Supreme Court explicitly held in *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Moreover, as discussed *supra*, the Eleventh Amendment bars federal courts from accepting suits brought by private parties against an unconsenting State and its agencies.  *Pennhurst*, 465 U.S. at 99;  *Edelman*, 415 U.S. at 675-77.

"[T]he civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Pennhurst*, 465 U.S. at 99; *v. Jordan*,

440 U.S. 332, 341 (1979); and *Edelman*, 415 U.S. at 675-77). *See also Burgos v. Dep't of Children & Families*, 83 F. Supp. 2d 313, 316 (D. Conn. 2000) ("Section 1983 does not override Eleventh Amendment immunity.") (citing *Quern*, 440 U.S. at 341).

It is thus "clearly established that the Eleventh Amendment bars section 1983 claims against state agencies." *P.C. v. Conn. Dep't of Children & Families*, 662 F.Supp.2d 218, 226 (D.Conn. 2009) (citing *Quern*, 440 U.S. 332). A claim against a state agency or state official, such as a community college and/or its officers, is a claim against the state; and consequently the Eleventh Amendment bars such a suit because "the state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 100 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). *See also Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir.2001) ("where the state is the 'real, substantial party in interest,' the Eleventh Amendment generally bars federal court jurisdiction over actions against state officials acting in their official capacities") (quoting *Pennhurst*, 465 U.S. at 101).[23]

Furthermore, in order to state a plausible claim under § 1983, a plaintiff must allege facts showing that the defendants are "persons" acting under the color of state law. In the case at bar, NCC, a public community college, is not a "person" within the meaning of § 1983. *See, e.g., Gaby v. Bd. of Trs. of Cmty. Tech. Colls.*, 348 F.3d 62, 63 (2d Cir.2003) (*per curiam*) (gathering cases holding that state universities and boards of trustees are not "persons" within the meaning of § 1983); *Mpala v. Gateway Cmty. Coll.*, No. 3:13-CV-01114 (VLB), 2014 WL 2048584, at *4 (D. Conn.

---

[23]   *See also Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (holding plaintiff's § 1983 claim against state agency barred by the Eleventh Amendment); *Moore v. Mara*, No. 3:08-CV-1946(AWT), 2010 WL 3270223, at *9 (D.Conn. Aug. 17, 2010) ("plaintiff's § 1983 claims against [state agency] and any claims against the individual defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution" so these claims "are . . . dismissed").

May 19, 2014) ("Like other state agencies, Gateway, a public community college, is not a 'person' within the meaning of Section 1983."); *Syrkin v. State Univ. of New York*, No. 04-CV-4336 (FB)(RML), 2005 WL 2387819, at *3 (E.D.N.Y. Sept. 29, 2005) (Eleventh "[A]mendment bars a [§ 1983] claim for . . . relief against SUNY"). *Accord Kaimowitz v. Bd. of Trustees of Univ. Of Illinois*, 951 F.2d 765, 767 (7th Cir. 1992) ("state university is an alter ego of the state, and, under *Will*, a 'State is not a person' under § 1983, it follows that a state university is not a person within the meaning of § 1983 and therefore not subject to suits brought under § 1983").

In the present case, NCC is immune from Plaintiff's fourth count per the Eleventh Amendment. In addition, NCC, a public community college and state agency, is not a "person" for purposes of § 1983. In sum, Count Four must be dismissed as to NCC.

### 2.      State Officials - Individual Defendants in Official Capacities

The Eleventh Amendment immunity to which a state official is entitled in a § 1983 suit depends on the capacity in which he or she is sued – *i.e.*, whether that official is being sued in his or her official or individual capacity. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).[24]  When a suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port*

---

[24]  The Supreme Court in *Hafer* explained the distinction between "official-capacity" suits and "personal-capacity" suits:

> State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

502 U.S. at 27 (citations omitted).

*Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49  (1994). Under such circumstances, a lawsuit is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity. *See, e.g.*, *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

Therefore,  as to the individual defendants acting in their *official* capacities, "the eleventh amendment immunity protects state officials sued *for damages* in their official capacity." *Minotti,* 798 F.2d at 609 (citing *Kentucky v. Graham*, 473 U.S. 159,169-70 (1985)) (emphasis added).[25]

On the other hand, as set forth *supra*, the Supreme Court has held that the Eleventh Amendment does not bar actions against a state official alleging a violation of federal law, where the plaintiff seeks an injunction that governs that official's future conduct. *Edelman*, 415 U.S. at 666–67 (1974). Under this "well-known exception" to Eleventh Amendment immunity, set forth in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law."[26] *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir.2007) (internal

---

[25]   The Court also notes that "a state officer loses the protection of the [eleventh] amendment if he acts *ultra vires*, *i.e.*, without any authority whatever." *Pennhurst*, 465 U.S. at 101 n. 11.  In other words, a state official is said to act in his *individual capacity* when he acts *ultra vires. Id.*  An officer acts *ultra vires* only when there is a lack of delegated power so "[a] claim of error in the exercise of that power is therefore not sufficient."  *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949)).   There has been no allegation by Plaintiff that the individual defendants acted *ultra vires* in this action.

[26]   In discussing the landmark decision in *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), the Second Circuit has stated that "the Supremacy Clause [in the U.S. Constitution] creates an implied right of action for injunctive relief against state officers who are threatening to violate the

quotation marks omitted).  *See also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (same); *Aiken v. Nixon*, 80 F. App'x 146, 147 (2d Cir. 2003) (plaintiffs' § 1983 claims against public psychiatric center's officials held "not barred by the Eleventh Amendment, because the complaint alleges an ongoing violation of federal law and seeks prospective relief"). Therefore, under the *Young* doctrine, federal courts may "enjoin state officials to conform future conduct to the requirements of federal law." *Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir.2002). Moreover, a plaintiff who seeks to invoke the jurisdiction of a federal court to obtain  prospective injunctive relief must demonstrate, *inter alia*, that "a federal court decision is likely to redress the injury." *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998).

Plaintiff  clarified in his prayer for relief that he seeks both monetary and  injunctive relief from the individual defendants and that they have violated federal law, namely, the Equal Protection Clause. As set forth *supra*, these individuals – Shields, Boyar, and Baer – while acting in their official capacities, are protected by  the Eleventh Amendment  from  a  § 1983 action seeking monetary damages.  Therefore, with respect to Plaintiff's prayer for monetary damages – $ 500,000 in compensatory damages, $1 million in punitive damages, attorney's fees, expenses and costs [Doc. 1, at 15, ¶¶ 6-8)] – his  claim against the individual defendants as state officials is barred.

However, Plaintiff also seeks injunctive relief, as follows:  "[p]reliminary and permanent injunctive relief requiring defendants grant him reasonable accommodations in nay [sic] future

---

federal Constitution or laws." *Burgio & Campofelice, Inc. v. New York State DOL*, 107 F.3d 1000, 1006 (2d Cir.1997) (quoting 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3566, at 102 (1984)).  However, as Judge Arterton of this District explained in *Stack v. Hartford*, 170 F.Supp. 2d 288  (D.Conn. 2001), "[t]he implied right of action, however, is unnecessary because § 1983 allows for injunctive relief against state officials, and when sued for prospective injunctive relief in his official capacity, a state officer is a 'person' for the purposes of § 1983." 170 F.Supp. 2d at 293 (citations omitted).

placement examinations and or examinations;" "[p]ermanent injunctive relief against defendants prohibiting present and future acts of discrimination against persons with disabilities in violation of the provisions of the ADA, and requiring the defendants to adopt a policy of providing reasonable accommodations to individuals with disabilities;" and "[p]ermanent and injunctive relief mandating [that] the defendants . . . vacate . . . the findings and ruling of expulsion of the plaintiff from defendant NCC." Doc. 1, at 15 (¶¶ 1-2, 5). Prospective injunctive relief, unlike monetary damages, is available against a state officer in his official capacity under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-160 (1908).

Therefore, a key inquiry with respect to Plaintiffs' official capacity claims is whether they are claims for prospective injunctive relief or retrospective relief. *Russell v. Dunston*, 896 F.2d 664, 667- 68 (2d Cir. 1990) ("Excepted . . from this general proscription [by the Eleventh Amendment] are suits against a state officer alleging the violation of federal law in which injunctive relief governs only the officer's future conduct and does not provide a retroactive remedy."), *cert. denied*, 498 U.S. 813 (1990). Furthermore, to obtain prospective injunctive relief, Plaintiff must ultimately demonstrate that "a federal court decision is likely to redress the injury." *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998) (citation omitted). A plaintiff may not simply rely on past injury to satisfy the injury requirement; he must show a likelihood of injury in the future. *Id.* (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

In the case at bar, Plaintiff's requests for injunctive relief are prospective. In particular, he requests preliminary and permanent injunctive relief: (1)  requiring Defendants to grant him reasonable accommodations in future placement tests, (2) prohibiting future and present discriminatory acts against disabled people under the ADA and mandating adoption of a policy of

reasonable testing accommodations for persons with disabilities; and (3) vacating his expulsion from NCC (*i.e.*, reinstatement).  Doc. 1, at 15 (¶¶ 1, 2, 5).[27]

As to Plaintiff's first and second requests for injunctive relief, these measures would prevent Plaintiff from experiencing future discrimination should he be allowed to return to NCC.  With respect to his third request,  reinstatement as an NCC student, the Second Circuit has articulated that reinstatement  is prospective relief that is not barred by the Eleventh Amendment. *Russell,*  896 F.2d at 668.  All three requests for injunctive relief thus redress Plaintiff's  past injury of discrimination in testing and expulsion and prevent likely discrimination of the same kind in the future. Accordingly,  to the extent that Plaintiff seeks prospective injunctive relief, his § 1983 claim against the individual defendants in their official capacities is not barred by the Eleventh Amendment.

In sum, the individual defendants, while acting in their official capacities, are state officials. Accordingly, no § 1983 official-capacity claims *for money damages* may be brought against them. Such suits are barred by the Eleventh Amendment and must be dismissed.   However,  Plaintiff's § 1983 claim against the individual defendants in their official capacities *for prospective injunctive relief,* including reinstatement of Plaintiff as a student, is not barred by the Eleventh Amendment if the state officials acted in an unconstitutional manner.   When a lawsuit challenges the constitutionality of the state official's actions, that claim is not against the state for Eleventh

---

[27]   As Plaintiff asserts, all of his  requested  forms of injunctive relief seek to alleviate alleged future and continuing violations of federal law by the state officials.  As Plaintiff describes in his Opposition Brief (Doc. 13), at 12:

> Taylor was denied and continues to be denied accommodations to which he is entitled to in violation of federal law. He was expelled as the result of seeking the accommodations that he was entitled to and his expulsion continues today. There is clearly a continuing violation of federal law.

Amendment purposes.  *Young*, 209 U.S. at 160.[28]

Whether Plaintiff has stated a proper § 1983 claim against the individual defendants, regarding injunctive relief, will depend on whether Plaintiff has stated a plausible equal protection claim.  If Plaintiff has pled no proper equal protection claim, there is no underlying constitutional basis for his § 1983 claim and thus no facially plausible claim in Count Four.  First, however the Court will examine whether the Eleventh Amendment bars the § 1983 claims against the state officials in their *individual* or personal capacities.

### 3.    Individual Defendants in Individual Capacities

With respect to § 1983 claims brought against a state official in his or her individual capacity, the state official has no Eleventh Amendment immunity.  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  *See also Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974) (Eleventh Amendment does not bar award of damages to be paid from the official's personal funds).  It follows that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991).  *See also  Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 747-48 (D. Conn. 1996) (when sued in his or her individual capacity, a defendant is considered a "person" within the meaning of § 1983 and is thus not entitled to invoke the protection of the

---

[28]    The United States Supreme Court held  in  *Young*  "that the Eleventh Amendment did not prohibit issuance of [an] injunction." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.  "The theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" *Id.* (citing *Young*, 209 U.S. at 160).  Because "the State could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.'" 465 U.S. at 102 (quoting *Young*, 209 U.S. at 160).

Eleventh Amendment) *aff'd*, 129 F.3d 113 (2d Cir. 1997).[29]

Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape*, 365 U.S. 167, 172 (1961). Congress expressly authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Section 1983, however, creates no substantive rights. Rather, it protects rights established by the Constitution and laws of the United States. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979). To determine whether Plaintiff has stated a proper § 1983 claim against the individual defendants in their official capacities, the Court must examine whether Plaintiff has stated a proper equal protection claim.

### b.    Underlying Claim - Equal Protection

To state a claim under § 1983, Plaintiff must allege that (1) he was deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).[30]

---

[29]    Defendants assert no absolute or qualified immunity to § 1983 liability in their motion to dismiss.

[30]    On that note, to succeed in this Circuit "in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's *direct or personal involvement* in the actions which are alleged to have caused the constitutional deprivation." *Stewart v. John Dempsey Hosp.*, No. 3:03-CV-1703 (WWE), 2004 WL 78145, at *3 (D. Conn. Jan. 9, 2004) (emphasis added). Section 1983 imposes liability only on officials who actually cause the

Plaintiff's § 1983 claim is based on the individual defendants' alleged violation of the Equal Protection Clause of the Fourteenth Amendment.  That clause directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In essence, "[t]he equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

As to Plaintiff's underlying equal protection claim, an essential element of such a claim is discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 242 (1976).  *See also Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).  For example, to set forth a "class of one" equal protection violation, Plaintiff must allege that he has been *intentionally* treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (citation omitted); *see also DeLoreto v. Ment*, 944 F. Supp. 1023, 1032-33 (D.Conn. 1996).

Examining the factual allegations in the Complaint, Plaintiff has pled the following facts to link the individual defendants' actions with his alleged injuries.  As to NCC Academic Advisor John Shields, Plaintiff met with him to discuss his course selection for the upcoming academic year. Doc. 1, ¶ 12.  At that time , Shields informed Plaintiff that he must undertake an academic placement test using a computer; and Plaintiff explained to Shields that because he "suffered from a medical disability consisting of dyslexia. . . . undergoing a placement test on a computer would [be] virtually impossible for [him]." *Id.*, ¶¶ 13- 14.  Shields made no response to this information about Plaintiff's

---

violation because *respondeat superior* is inapplicable in § 1983 actions.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692–95 (1978); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

disability.  *Id.*, ¶ 15.

Based on these allegations, construing the complaint liberally, accepting all well-pled factual allegations as true, and drawing all reasonable inferences in the Plaintiff's favor,  one can infer that Shields was aware of Plaintiff's dyslexia and his asserted need for test assistance but failed to act to accommodate those needs.  Rather, Shields  simply "gave no response to the information [P]laintiff provided" regarding his disability.  *Id.*   Under such  circumstances, it appears that Shields may have exercised  his  discretion  as  an  academic  advisor  to  ignore   Plaintiff's  request  for  test-taking accommodations.

As to defendant Test Monitor Ilene Boyar, Plaintiff alleges that on or about April 5, 2013, when Plaintiff and his doctor arrived at NCC for the placement test, he was informed that they must leave the premises.  *Id.*, ¶ 19.  The next day, "Boyar [allegedly] called the [P]laintiff" to accuse him of "cheating and other allegations."  *Id.*, ¶ 20.  Therefore, according to Plaintiff,  Boyar, acting as Test Monitor, viewed Plaintiff's requested accommodation – bringing a doctor to the placement test – as "cheating."  Such accusations ultimately led to Plaintiff's expulsion from NCC, which Plaintiff views as unlawful discrimination against him.

Finally, regarding Dean of Students Robert Baer, Plaintiff alleges that Baer commenced disciplinary proceedings against him after Boyar accused him of cheating.  *Id.*, ¶ 21.  On May 22, 2013, Baer held a "Student Conduct Hearing" which resulted in the Hearing Panel concluding that there was sufficient information to determine that Plaintiff had violated "Section 3 of the Policy on Student Conduct, Expectations for Student Conduct #2."  *Id.*, ¶ 22.  As a  result of the hearing, Plaintiff was expelled  from NCC.  Plaintiff's allegations assert that Baer conducted the  hearing on the charges that Plaintiff was cheating on the placement test, resulting in Plaintiff's allegedly

discriminatory expulsion from NCC.

Finally, as to all three individual defendants, Plaintiff alleges –

Defendants have provided other individuals with similar disabilities with reasonable accommodations which they denied the plaintiff, namely extended time, use of a amanuensis, and recording examination answers in a test booklet, and not subjecting the other individuals with similar disabilities to a disciplinary hearing resulting in his expulsion. Defendants['] refusal to provide these reasonable accommodations to the plaintiff while granting them to other persona [sic] who are similarly situated, and subjecting the plaintiff to the disciplinary hearing and expulsion, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and is thus a violation of plaintiff's civil rights as guaranteed by 42 U.S.C. Section 1983, causing him great pain and suffering, mental anguish, humiliation and loss of professional reputation.

Doc. 1, at 13-14 (¶ 55).

1.    **No Section 1983 Action for Freedom from Disability Discrimination, Which Is Secured by ADA, 42 U.S.C. § 12131**

First, it is clear that the crux of Plaintiff's § 1983 claim is disability-based discrimination, which violated his rights under the Equal Protection Clause.  However, because there are statutes which expressly provide relief for such injuries, disability-based discrimination claims are generally not cognizable under § 1983.  *See, e.g. Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y.  2014) ("freedom from discrimination on the basis of disability is a right secured by statute [42 U.S.C. § 12131 *et seq.*] (the "Americans with Disabilities Act" or "ADA"); . . . not by the Constitution"), *appeal dismissed*, No. 14-742 (2d Cir. Apr. 9, 2014); *EC ex rel. RC v. Cnty. of Suffolk*, 882 F.Supp. 2d 323, 355 (E.D.N.Y. 2012) ( "ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983.");  *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828 (KMK), 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss § 1983 claim because "[t]he broad

37

discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that ... the ADA [is] designed to protect against, not the Equal Protection Clause") (internal quotation marks omitted)). *See also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir.2004) ("[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement"); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord O'Leary v. Town of Huntington*, No. 11 Civ. 3754(JFB), 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012) ("Failure [of employer] to provide a reasonable accommodation [to disabled employee] cannot form the basis of an Equal Protection claim.").  Thus, Plaintiff's claim that he was discriminated against on the basis of his disability is not actionable under § 1983.  *See, e.g.*, *Fierro*, 994 F.Supp.2d at 590.

Second, even if Plaintiff were able to proceed with his § 1983 action – *i.e.,* despite the fact that  his disability rights are secured by statute –  he has failed to state a valid equal protection claim under either a "class of one" theory or a "selective treatment" theory.

## 2.        "Class of One" Theory of Equal Protection

The Equal Protection Clause has traditionally been applied to governmental classifications that treat certain groups of citizens differently than others.  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).  However, in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court recognized that the Equal Protection Clause can "give[ ] rise to a cause of action on behalf of a 'class of one' where the plaintiff [does] not allege membership in a class or group."  *Id.* at 564. *See also Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 291-92 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 831 (2013).

To succeed on a "class-of-one" claim under the Equal Protection Clause, a plaintiff must establish that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010).[31]  Therefore, to state a claim a "class-of-one" plaintiff "must identify at least one comparator with whom [he] shares 'an extremely high degree of similarity' sufficient to 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise  –  is all but certain.'" *Gray v. Easton*, No. 3:12–cv–00166 (JAM), __ F.3d __, 2015 WL 4459864, at *3 (D.Conn. July 20, 2015) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

In failing to provide the name of even one comparator – one similarly disabled person who took placement tests at NCC –  Plaintiff's fourth count fails to meets the *Iqbal* requirement of 'stat[ing] a claim to relief that is plausible on its face,'"  556 U.S. at 678. In particular, Plaintiff's claim  is facially implausible because it lacks the requisite degree of specificity for factual pleading,

---

[31]    *See also Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ( plaintiff must establish that "the similarity in  circumstances and difference in treatment [between plaintiff and comparator] are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.")(internal quotation marks omitted); *Witt v. Vill. of Mamaroneck*, No. 12–CV–8778 (ER), 2015 WL 1427206, at *8-9  (S.D.N.Y. Mar. 27, 2015) (dismissing "class of one" equal protection claim for failure to state a claim where Plaintiffs were "unable to identify materially similar, let alone identical comparators") (citing *Ruston Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010));  *Cutie v. Sheehan*, No. 1:11–cv–66 (MAD/RFT), 2011 WL 4736358 at *9 (N.D.N.Y. Oct. 5, 2011) (noting that Plaintiffs' proposed amended complaint "cure[d] [the] defect in their class-of-one equal protection claim" because their original complaint failed to identify a similarly situated party who received neutral, non-discriminatory treatment).

*Iqbal*, 556 U.S. at 679.  Although Plaintiff broadly alleges that there were disabled students who were "similarly situated" to him, he fails to name any such individuals or specify the material respects in which they were similar.[32]  *See, e.g., Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (holding "class of one" claim failed to allege plausible entitlement to relief because "the [Plaintiffs] do not allege specific examples of the Town's proceedings, let alone applications that were made by persons similarly situated"), *cert. denied*, 562 U.S. 1108 (2010). Plaintiff's sweeping reference to "similarly situated" students fails to comprise "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[33]  Put simply, his equal protection claim "fails for lack of factual allegations to support the legal conclusion," *Ruston,* 610 F.3d at 59.

### 3.    "Selective Enforcement" Theory of Equal Protection

The allegations regarding equal protection set forth by Plaintiff suggest an attempted "class of one" claim in which he was intentionally treated differently from others with no rational basis for

---

[32] For example, there may have been NCC students with a variety of disabilities (*e.g.,* loss of sight, hearing impairment, inability to walk) who each needed a different set of accommodations to take NCC placement tests.  There may also be other dyslexic students at NCC who have different types of that disability (*e.g.,* visual, auditory, dyspraxia, dysgraphia, *etc.*).  Absent the identity and specific disabilities of those who are allegedly "similarly situated" to Plaintiff and how each was accommodated during tests by the Defendants, there is no way to determine whether there can be a reasonable inference that Plaintiff was intentionally singled out from similarly disabled persons for improper treatment.  For example, Defendants may have believed, albeit erroneously, that a blind person's request to utilize an amanuensis was more compelling than such a request from a person with Plaintiff's form of dyslexia.

[33] *Cf.  Cutler v.  New Haven*, No. 3:11cv662 (WWE), 2011 WL 6209891, at *2 (D.Conn. Dec. 12, 2011) (denying Rule 12(b)(6) motion to dismiss "class of one" claim where "Plaintiff has named other bars and restaurants in downtown New Haven as comparators that have not been subjected to the same treatment as plaintiff's establishments").

that difference.  However, if Plaintiff's § 1983 action were allowed to proceed, despite the existence of disability rights statutes, and  if construed as a "selective treatment" claim, Plaintiff still fails to state a facially plausible equal protection claim.

In order to state a claim for "selective enforcement," the plaintiff must establish "(1) that he was treated differently from others similarly situated," and (2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Gentile v. Nulty*, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)) (internal quotation marks omitted).

As set forth *supra*, Plaintiff's Complaint lacks any specific  factual allegations to demonstrate that he was treated differently from individuals "similarly situated in all material respects." "[D]emonstrating that a plaintiff has been treated different from similarly situated individuals is the *sine qua non* of a ... selective enforcement violation." *Goldfarb v. Town of West Hartford*, 474 F.Supp. 2d 356, 368 (D.Conn.2007).    For individuals to be "similarly situated," they must at a minimum be "similarly situated in all material respects." *Emmerling v. Richmond*, No. 09-CV-6418, 2010 WL 2998911, at * 12 (W.D.N.Y. July 27, 2010).   Plaintiff names no such individuals, but rather concludes that they exist.   Doc. 1, ¶ 55 (referring to "other individuals with similar disabilities" without naming one person or even describing him).

Moreover, Plaintiff makes no allegation regarding any conduct taken maliciously or with a bad faith intent to injure him.   He simply states that "Defendants['] refusal to provide these reasonable [testing] accommodations . . . while granting them to other person[s] who are similarly situated" was "arbitrary and capricious."   Doc. 1, ¶¶ 55, 56. "[B]oilerplate" allegations regarding

bad intent, "without more," have been viewed as failing to support a selective enforcement claim. *See, e.g., Norwood v. Salvatore*, No. 12 Civ. 1025(MAD), 2014 WL 203306, at *5 (N.D.N.Y. Jan. 17, 2014) ("plaintiff must allege more than mere conclusory allegations to establish malicious or bad faith intent on behalf of a defendant to harm the plaintiff"). In sum, if construed as stating a "selective enforcement" equal protection claim, Plaintiff's allegations fail to set forth any factual allegations to prove: (1) that there were similarly situated individuals treated differently and (2) that Defendants acted with malicious or bad faith intent to injure him.

A complaint alleging a § 1983 claim must allege all elements of the constitutional or statutory claim upon which the § 1983 claim is based, in this case a violation of the Equal Protection clause of the Fourteenth Amendment. Here, even assuming *arguendo* that Plaintiff's fourth count is actionable under § 1983, whether suing the individual defendants in their official capacities for injunctive relief or in their personal capacities for damages, Plaintiff has failed to state a facially plausible § 1983 claim for violation of equal protection. A federal statutory or constitutional violation is the necessary predicate for a § 1983 action.

In sum, Plaintiff's § 1983 claim may not be cognizable in light of the existence of the ADA, 42 U.S.C. § 12131, *et seq.,* which secures freedom from discrimination on the basis of disability. Furthermore, even if Plaintiff were allowed to bring his § 1983 claim based on alleged discrimination due to his disability, his equal protection claim would still fail because the Complaint fails to plausibly allege that he was treated differently from any "similarly situated" individual. In failing to provide the identity of at least one comparator, Plaintiff has failed to allege that Shields, Boyar, and/or Baer acted intentionally to deprive him of his right to equal protection with respect to testing accommodations. The motion to dismiss Count Four, as addressed to Shields, Boyar, and

Baer, will be granted.

**5**.     <u>**Count Five - Claim for "Arbitrary and Capricious" Conduct by Defendants**</u>

With respect to Plaintiff's fifth count, alleging that Defendants acted in an "arbitrary and capricious" manner, Defendants contend that it is "rife with legal infirmities." Doc. 8, at 6. Defendants maintain that such a cause of action "simply does not exist under state law." *Id.*

Defendants are correct that there is no designated common law cause of action for "arbitrary and capricious" behavior in Connecticut. There does exist, however, a body of Connecticut case law recognizing liability of a *private* educational institution for arbitrary and capricious behavior toward a student. Such actions are framed as breach of contract claims and/or denials of substantive due process. In contrast, there are no such common law actions against Connecticut *state* schools or governmental educational boards. Rather, in cases where a state entity has acted with arbitrary and capricious behavior toward a student or teacher, the cases have involved federal constitutional claims.

An example of a student's claim for arbitrary and capricious conduct by a private school occurred in *Day v. Yale University School of Drama*, No. CV970400876S, 2003 WL 1702550 (Conn. Super. Ct. Mar. 20, 2003). In that case, Day was a drama student at Yale University School of Drama ("Yale Drama"). In his first year, Day was placed on probation for his excessive absences from class. He asserted that "many of his absences resulted from health issues with diverticulitis and depression," but, despite being offered a medical leave, "he did not seek an accommodation from Yale for these problems." *Id.,* at * 3. After a year of meeting repeatedly with the Associate Dean of Yale Drama, Earl Gister, regarding his absences and probation, Day was informed that he must withdraw from the school or else be "dismissed as a student" by unanimous vote of the faculty. *Id.*

Because Day refused to withdraw, he was dismissed. He thereafter sued Yale Drama for, *inter alia,* breach of contract, alleging that the school acted  "arbitrarily and capriciously" in dismissing him. To support his case, Day pointed to statements by Dean Gister that "his acting was improving in the latter half of his second academic year."  *Id.*

The state trial court ultimately dismissed Day's breach of contract claim on summary judgment for failure to provide sufficient facts to support a finding of "arbitrary or capricious" decision-making by Yale Drama.  However, in analyzing that claim, the court noted that such a plaintiff could potentially, with the proper factual basis, "successfully assert that Yale's termination of him resulted from arbitrary, capricious or bad faith conduct by the defendants."  *Id.*, at *2 (citing *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 592-93 (1996)).  The *Day* court explained its reasoning as follows:

> Educational discretion is . . .  not limitless. The plaintiff properly observes that, in exercising its professional judgment, an educational institution does not have license to act arbitrarily, capriciously, or in bad faith. Such a substantial departure from academic norms *may implicate substantive due process . . . or may constitute the breach of an educational contract by a private institution*.

2003 WL 1702550, at *2 (emphasis added) (collecting cases).  Although it may create a challenging evidentiary burden for a plaintiff, an action for "arbitrary, capricious, or bad faith conduct" may be proven with "an evidentiary foundation to demonstrate" that the private educators' decisions at issue had "no discernable rational basis."  *Id.*, at * 2.

As in *Day*, other Connecticut courts have recognized that liability may be imposed against a private school for "arbitrary and capricious behavior" which equates with a breach of contract. In other words, a private school may  breach a contract with a student by making an academic decision "arbitrarily, capriciously, or in bad faith." *See, e.g., Stockstill v. Quinnipiac Univ.*, No. 3:10–cv–265

44

(VLB), 2010 WL 2011152, at *8 (D.Conn. May 19, 2010); *Daley v. Wesleyan University*, 63 Conn.App. 119, 133–34 (2001). *See also Okafor v. Yale Univ.*, No. CV980410320, 2004 WL 1615941, at *6 (Conn. Super. Ct. June 25, 2004) ("The university in other words must comply with its own regulations, that's part of the contract; if it did not, any dismissal of a student could be classified as arbitrary. In any event it has been held that a private university expelling a student must comply with its own procedural rules."); *Jacobs v. Ethel Walker School Inc.*, No. CV020515279S, 2003 WL 22390051, at * 6 (Conn. Super. Ct. Sept. 30, 2003) ("[I]n exercising its professional judgment, an educational institution does not have license to act arbitrarily, capriciously, or in bad faith. Such a substantial departure from academic norms may implicate substantive due process . . . or may constitute the breach of an educational contract by a private institution.") (citation omitted).

However, with respect to *state* educational bodies, the context in which Connecticut courts have examined "arbitrary and capricious" conduct involves constitutional violations. *See, e.g.*, *Sentner v. Board of Trs.*, 184 Conn. 339, 342 (1981) ("In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts.")*; Barde v. Board of Trs. of Reg'l Cmty. Colls.*, 207 Conn. 59, 64 (1988) (same)*.* Therefore, for example, when a tenured teacher, who had a recognized property right in his position, was removed from that position by the board of trustees of regional community colleges, the Connecticut Supreme Court held that the teacher was entitled to a "fair hearing on the cause for . . . termination of his employment " pursuant to "the due process clause of the constitution." *Sentner*, 184 Conn. at 343 (citation omitted). *See also Barde,* 207 Conn. at 64-66 (examining, and holding inadequate, factual basis for tenured faculty member's equal protection claim against board of trustees of regional community colleges).

45

Defendants argue that with respect to "arbitrary and capricious" behavior, "even a properly pled state law cause of action would be barred by the Eleventh Amendment." Doc. 8, at 7. Defendants point out that "[u]nless a state waives its sovereign immunity or Congress abrogates it through legislative action, the Eleventh Amendment bars plaintiffs from suing a state in federal court, regardless of the type of relief sought." *Benoit v. Conn. Dep't of Motor Vehicles*, No. 3:10cv1007 (IBA), 2012 WL 32962, at *3 (D. Conn. Jan. 6, 2012) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984)). Chapter 53 of the Connecticut General Statutes, Conn. Gen. Stat. § 4-141 defines a "claim" as one "for the payment of money or refund by the state or for permission to sue the state." Doc. 8, at 7. Moreover, Conn. Gen. Stat. § 4-165(a) provides that "no state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Finally, "[a]ny such complaint [against a state officer] must be presented 'as a claim against the state under the provisions" of Chapter 53. Conn. Gen. Stat. § 4-165(a).

Defendants assert that because Plaintiff's "fifth count purports to allege some sort of state common law tort claim against a state agency and certain of its officials and employees, arising out of their employment as state officials and employees," the claim is barred by the "Eleventh Amendment and state sovereign immunity." Doc. 8, at 7. Because Plaintiff has gained no permission from the state to sue, Defendants argue that his "claim must be dismissed." *Id.* (citing *Canning v. Lensink*, 221 Conn. 346, 349 (1992); *Sentner*, 184 Conn. at 342, and *Barde,* 207 Conn. at 64-66).

With respect to the doctrine of sovereign immunity, Connecticut courts have "long recognized the common-law principle that the state cannot be sued without its consent." *Sentner*,

184 Conn. at 342 (collecting cases).  In addition, "because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." *Id.*  In such circumstances, the Connecticut Supreme Court has "dealt with such suits as if they were solely against the state and have referred to the state as the defendant." *Id.* (citing *Anselmo v. Cox*, 135 Conn. 78, 79-80 (1948), *cert. denied*, 335 U.S. 859 (1948); *Rusch v. Cox*, 130 Conn. 26, 34 (1943)).

It thus follows that, if construed as a state common law action, Count Five is barred by the Eleventh Amendment as to NCC and the individual state officials. As the United States Supreme Court stated in *Pennhurst State School & Hospital v. Halderman*, a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when – as here – the relief sought . . . has an impact directly on the State itself." 465 U.S. at 117.   The *Pennhurst* court elaborated as follows:

> A federal court's grant of relief against state officials *on the basis of state law*, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* at 106 (emphasis added).

If Plaintiff's self-styled claim for "arbitrary and capricious behavior" is a common law action against NCC and the individual defendants, it  is barred by the Eleventh Amendment and therefore fails to state a claim.  *Delrio v. Univ. of Connecticut Health Care*, 292 F.Supp. 2d 412, 419 (D.Conn. 2003).  NCC is a state agency, falling within the sovereign immunity  protection of the Eleventh Amendment.  Furthermore, the individual defendants, as state officials,  are not subject to such a common law suit.  Whether in their official or personal capacities, these state official defendants

did not act to form, much less breach, a private educational contract with Plaintiff.

On the other hand, as set forth *supra,* as in *Sentner*, 184 Conn. at 342, Connecticut courts have recognized that "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts," such as violations of due process. *Id.* (citations omitted).[34]   In his "Fifth Cause of Action," Plaintiff alleges unequal treatment: "Defendants have provided other individuals with similar disabilities with reasonable accommodations which they denied the [P]laintiff, namely extended time, use of a[n] amanuensis, and recording examination answers in a test booklet, and not subjecting the other individuals with similar disabilities to a disciplinary hearing resulting in his expulsion." Doc. 1, ¶ 56.   In essence, rather than pleading a state law claim, Plaintiff's claim for "arbitrary and capricious treatment" is essentially a restatement of his prior claim in Count Four, for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  *See* "Fourth Cause of Action." Doc. 1, ¶ 55.

To the extent that Plaintiff's fifth count is redundant of his fourth count, asserting a federal equal protection claim, it must be dismissed.  As set forth *supra* in Part III.B.4.b., that claim fails to identify any similarly situated individuals and thus fails to state a plausible claim.

In sum, whether viewed as a Connecticut common law claim or a constitutional claim for violation of equal protection, Count Five must be dismissed against both NCC and the individual defendants.

_____

[34]   *See also Mitchell v. King*, 169 Conn. 140, 145 (1975) ("This court is mindful of the comprehensive authority of school officials to prescribe and control conduct in schools and the need for flexibility and reasonable breadth in statutes which guide them in their duties and which authorize them to accomplish educational ends. That authority, however, must be consistent with *constitutional safeguards*.") (emphasis added).

## IV.  CONCLUSION

For the reasons stated above,  Defendants' "Motion to Dismiss Plaintiff's Complaint" [Doc. 7] is GRANTED with respect to the following claims:

1.      Count One, for alleged violation of Title III of the ADA,  42 U.S.C. § 12189, against all Defendants because the Defendants are not private persons or entities within the meaning of Title III of the ADA;

2.      Counts Two and Three, for violation of Title II of the ADA, 42 U.S.C. §12132,  and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against the individual defendants in their individual or personal capacities based on the binding  precedent of the Second Circuit in *Garcia*,  213 F.3d at 346, and the terms of the relevant statutory provisions; these defendants are not "persons" or program providers within the meaning of Titles II and/or III of the ADA, or § 504 of the Rehabilitation Act;[35]

3.      Count Four, arising under 42 U.S.C. § 1983, for alleged violation of the Equal Protection Clause, against all Defendants because, *inter alia*, neither a state nor its officials acting in  their  official capacities  are   "persons" under § 1983; and to the extent that the individual defendants are sued in their personal capacities, Plaintiff has failed to state a plausible equal protection claim under either the "class of one" or "selective enforcement" theory;[36] and

---

[35]   *See Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).

[36]   Also, because the basis for Plaintiff's § 1983 claim is discrimination for his disability in violation of the Equal Protection Clause and the ADA expressly provides relief for disability-based discrimination, Plaintiff's equal protection claim is arguably not cognizable under § 1983. *See, e.g. Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) ("freedom from discrimination on the basis of disability is a right secured  by  statute  [42 U.S.C. § 12131, *et*

4.    Count Five, for "arbitrary and capricious" behavior under Connecticut state law in that, assuming that such a common law claim exists, the claim against NCC and the individual defendants is barred by the Eleventh Amendment and therefore fails to state a claim.

As to each of the dismissed claims, the Court has employed the *Iqbal* facial plausibility test. Construing the complaint liberally, accepting all well-pled factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that the dismissed claims fail to "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).   In other words, the Plaintiff failed to plead facts "allow[ing] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* at 678.   Also, to the extent that any of the dismissed claims are dismissed due to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over them.

The only claims remaining in suit are:  Counts Two and Three, for violation of Title II of the ADA, 42 U.S.C. § 12132,  and violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, respectively, against NCC and the individual defendants in their *official* capacities.   All other claims are DISMISSED.

Finally, the Court holds in reserve its decision with respect to the issue of sufficiency of service and thus whether there is personal jurisdiction over NCC and the individual defendants in their official capacities.  To ascertain whether there has been proper service on these defendants, the Court orders the following supplemental submissions:

---

*seq.*]; . . . not by the Constitution").

1. Plaintiff will file and serve a brief, supported by affidavits, with the Court on or before **October 19, 2015**, detailing all facts regarding the manner and time(s) in which service of process was made upon Defendants and whether said service complied with the applicable Federal and Local Rules of Civil Procedure and Connecticut state law.

2. On or before **October 19, 2015**, if service has been made, Plaintiff must file a return or proof of service in compliance with both the Federal and Local Rules of Civil Procedure. Plaintiff may thereby prove to the Court that service was in fact made on each defendant, including when and by whom it was served and received.

3. If so advised, Defendants may, **within 7 days** after Plaintiff's submission regarding service, object or respond thereto and explain to the Court specifically why Plaintiff's service upon the Defendants was inadequate. If, having reviewed Plaintiff's supplemental submission, Defendants fails to respond, the Court will deem their argument regarding insufficient personal service abandoned and deny the motion to dismiss for lack of personal jurisdiction.

Finally, Plaintiff argues that "if the Court grants Defendants' Motion to Dismiss, . . . , Plaintiff should be permitted to amend his complaint to allege additional specific allegations in support of [his] claim." Doc. 13, at 13. Because there is no pending motion to amend at this time, the Court cannot evaluate whether any proposed amendment would be "futile" or otherwise disallowed under *Foman v. Davis,* 371 U.S. 178, 182 (1962) and its progeny. Absent proper

submission of a motion to amend, supporting memorandum, and proposed amended complaint, the

Court makes no finding as to whether the complaint may be amended. Suffice it to say, most of the

claims dismissed herein cannot be rectified by re-pleading given the legal grounds for their dismissal.

Plaintiff is advised to review those grounds prior to filing any motion to amend.

      The foregoing is SO Ordered.

Dated:  New Haven, Connecticut
       September 28, 2015

                                     */s/Charles S. Haight, Jr.*
                                     CHARLES S. HAIGHT, JR.
                                     Senior United States District Judge